[No. 8361–9–I.   Division One.   August 24, 1981.]

WILLIAM N. NIRK, *Appellant*, v. THE CITY OF KENT
CIVIL SERVICE COMMISSION, *Respondent*.

*Betts, Patterson & Mines* and *William P. Fite,* for
appellant.

*Robert W. Kitto,* for respondent.

DURHAM, J.—William N. Nirk appeals an order affirming
the decision of the Civil Service Commission of the City of
Kent (Commission) discharging him from the police
department for allegedly giving false testimony in court.

At the discharge hearing, counsel for the City of Kent
initially stated, "The witness should be sworn. Do you
swear your witnesses?" The chairman of the Commission
responded: "We do not." Following direct examination of

the first witness, Nirk's counsel made various objections, and at one point stated, "And may I inquire of the Commission if it is the Commission's policy not to swear witnesses at these hearings?" After this question, the following colloquy took place:

[Commission Chairman]: [Counsel], what constitutes an informal hearing? Have you been to an informal hearing where there was swearing of witnesses?

[Nirk's Counsel]: Every Civil Service Commission I ever had—I was in or Personnel Hearing, . . . they did swear witnesses.

[Commission Chairman]: This is the third hearing that I have participated and we haven't done it in the first two. It is my understanding and our understanding at the Commission that we are here to obtain the facts from the witnesses as you gentlemen present them. I believe we have to assume that these witnesses, you know, are going to tell the truth. So, I don't know. Can you say the point of law that requires them to be sworn in?

[Nirk's Counsel]: I don't know whether the statutory procedure is mandatory on that point but—

[Commission Chairman]: I think we would prefer not to, [Counsel]. As soon as we do that we are going to be acting in the same way that you act under the rules of evidence. And I don't believe we need to do that under the RCW.

Nirk's counsel informed the Commission that under RCW 41.12.040 it has the power to administer oaths; however, the Commission chairman finally stated: "We are not going to swear the witnesses. It is our decision. We want the facts in the case so that we can make an honest decision."

Following the testimony of various unsworn witnesses, the Commission found that the suspension and discharge were justified. Nirk then filed a notice of appeal to the Superior Court, which affirmed the decision of the Commission.

Nirk claims that he was denied due process of law because the witnesses at the hearing were not sworn. In Superior Court, the primary issue concerned the substantive merits of the discharge, and the trial court appropri-

ately directed its attention in that direction. However, the issue we find dispositive was raised in the notice of appeal from the Commission's decision and discussed in a trial memorandum, and, therefore, may be raised on appeal. Further, under accepted standards of review, we directly review the actions of the Commission. *Benavides v. Civil Serv. Comm'n,* 26 Wn. App. 531, 613 P.2d 807 (1980).

The procedures for the discharge of police officers are set forth in RCW 41.12 *et seq.* RCW 41.12.090 provides that the investigation by the Commission "shall be confined to the determination of the question of whether such removal . . . was or was not made for political or religious reasons and was or was not made in good faith [f]or cause." It further provides that all investigations by the Commission shall be by public hearing after reasonable notice to the accused of the time and place of such hearing and the accused shall be afforded an opportunity to appear in person and by counsel to present his defense.

Certain minimal due process guaranties must be afforded in a Civil Service Commission adjudicatory hearing concerning a discharge. As was stated in *State ex rel. Swartout v. Civil Serv. Comm'n,* 25 Wn. App. 174, 182, 605 P.2d 796 (1980):

> Thus, if the government dismisses an employee on charges that call into question his good name, honor or integrity, notice and an opportunity to be heard are essential.

*See State ex rel. Perry v. Seattle,* 69 Wn.2d 816, 420 P.2d 704 (1966).

> The opportunity to be heard has at least three substantial elements: (1) the right to know seasonably the charges or claims preferred; (2) the right to meet the charges with witnesses and evidence; and (3) the right to have the aid of counsel. If any of these rights are denied a party, he does not have a hearing that is conformable to the elementary standards of fairness and reasonableness.

*Luellen v. Aberdeen,* 20 Wn.2d 594, 607, 148 P.2d 849 (1944).

RCW 41.12.040 provides that the discharge hearing may be informal and the technical rules of evidence do not apply, and

> the commission . . . shall have the power to administer oaths, subpoena and require the attendance of witnesses . . . in the manner prescribed by law for like depositions in civil actions in the superior court; and the oaths administered hereunder . . . shall have the same force and effect as the oaths administered by a superior court judge in his judicial capacity . . .

RCW 41.12.040(4). The question is if the hearing can become so informal as to permit unsworn testimony. This issue appears to be one of first impression in this state. We believe that witnesses at a civil service discharge hearing must be sworn.

██ ██ There are many persuasive reasons to require witnesses to be sworn before the Civil Service Commission. Initially, significant interests are at stake in discharge hearings which require a level of due process consistent with accepted notions of fair play. Requiring witnesses to testify under oath has become a commonly accepted procedure. Under ER 603, which is based in part on article 1, section 6 of the Washington State Constitution, witnesses are required to be sworn:

> Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so.

In the comment it is stated:

> This rule is the same as Federal Rule 603 and is substantially in accord with previous Washington law. The statutes relating to oaths, RCW 5.28.010 through 5.28-.060, provide that different forms of the oath may be used as required by the special circumstances of the witness. The statutes are consistent with the rule and are not superseded. The use of an affirmation may be substituted for an oath if the witness so desires. While the form of the oath or affirmation may be varied, it has been held that some form of swearing in the witnesses is

required. *In re Ross,* 45 Wash.2d 654, 277 P.2d 335 (1954).

The primary function of requiring witnesses to be sworn is to add an additional security for credibility by impressing upon them their duty to tell the truth, and to provide a basis for a charge of perjury. *See generally* 6 J. Wigmore, *Evidence* § 1815–29 (rev. ed. 1976); 3 J. Weinstein & M. Berger, *Evidence* ¶ 603[01] (1978). We recognize that, historically, certain writers have questioned the efficacy of oaths. One author quoted by J. Wigmore at pages 412–13 has stated:

> To my mind a man is as likely to tell the truth without kissing an unsavoury Testament, holding up his hand in affirmation, going through the Quaker's formula, or crashing a teacup, as the Chinese do. It is said that some persons are born liars. I don't know; I fancy some are! I have known a few who have justified the promise of their youth. But the law is paramount in its insistence on an oath. "My Lord," said a witness to Mr. Justice Maule, "you may believe me or not, but I have stated not a word that is false, for I have been wedded to truth from my infancy." "Yes, sir," said the judge drily, "but the question is, how long have you been a widower?"
>
> . . .
>
> There is one court which may well be called "The Supreme Court of Lies," the branch of a division devoted to matrimonial disputes. In every contested case, where there is allegation and denial of adultery, there must be perjury.

Notwithstanding such observations, we believe that the administration of an oath is significant in arriving at the truth.

A further reason for requiring an oath concerns the provision in RCW 41.12.040(4), which authorizes the Commission to subpoena witnesses and administer oaths in the same manner as a superior court judge. By providing for the administration of oaths, the legislature implicitly recognized that witnesses should be sworn. The legislature similarly provided in the administrative procedure act for the

administration of oaths. RCW 34.04.090(8)(a). Administrative agencies may sometimes reach decisions solely on written evidence:

> [W]ritten evidence can expedite and simplify formal administrative proceedings through reducing the controversy to *verified* written statements which are then exchanged by the parties for the purpose of rebuttal.

(Footnote omitted. Italics ours.) E. Cleary, *McCormick on Evidence* § 356, at 855 (2d ed. 1972). Therefore, the statements should be under oath even when the testimony is written. Such a requirement poses a minimal inconvenience to the administrative body and is consistent with the informality of the hearing.

Washington courts have held that witnesses should be sworn in a variety of other contexts. In *In re Ross,* 45 Wn.2d 654, 655, 277 P.2d 335 (1954), the court held that in a permanent deprivation proceeding the witnesses should be sworn:

> This statement is not to be tortured into a holding that all witnesses must be sworn in all juvenile court proceedings. It has long been recognized that informality and friendly discussion can, under many circumstances, attain the best results with juveniles and their parents. We do hold, however, that before parents can be permanently deprived of all custody, control, care, or parental rights over their children, they must be accorded the opportunity of a hearing, and at such hearing the witnesses should be sworn, and the failure to comply with a request that the witnesses be sworn is prejudicial error.

*See generally* 98 C.J.S. *Witnesses* § 320 (1957). In *Metcalf v. Department of Motor Vehicles,* 11 Wn. App. 819, 822, 525 P.2d 819 (1974), the court held that a sworn report is required under RCW 46.20.308(3), the implied consent statute, stating that a "contrary result may well raise significant due process questions."

Other jurisdictions which have considered this question also require testimony to be under oath. In *Deel Motors, Inc. v. Department of Commerce,* 252 So. 2d 389, 394 (Fla. Dist. Ct. App. 1971), the court stated in discussing admin-

istrative hearings that:

Such proceeding contemplates that the party to be affected by the outcome of the proceeding will be given reasonable notice of the hearing and an opportunity to appear in person or by attorney and to be heard on the issues presented for determination. It is contemplated that the order to be entered will be based on competent and substantial evidence adduced by the parties consisting of sworn testimony of witnesses and properly authenticated documents bearing the required indicia of credibility.

In *L.A. Darling Co. v. Water Resources Comm'n,* 341 Mich. 654, 67 N.W.2d 890 (1955), the court held that the administrative hearing violated due process because, among other things, the witnesses were not sworn. In *Rector v. Texas Alcoholic Beverage Comm'n,* 599 S.W.2d 800 (Tex. 1980), the court held that an administrative hearing concerning an application for a wine and beer retailer's license violated due process because the witnesses were not sworn and the applicant was denied the right to cross–examination. The court in *Rector v. Texas Alcoholic Beverage Comm'n, supra* at 801, stated: "[T]he application . . . was denied without due process because [the applicant] was denied these basic and traditional tools for searching out the truth." *Cf. Friesel v. Board of Educ.,* 79 Ill. App. 3d 460, 398 N.E.2d 637 (1979); *People v. Copeland,* 70 App. Div. 2d 884, 417 N.Y.S.2d 103 (1979); *State v. Salafia,* 29 Conn. Supp. 305, 284 A.2d 576 (1971). *But see Sinclair Oil Corp. v. Smith,* 293 F. Supp. 1111 (S.D.N.Y. 1968).

Finally, without sworn testimony a reviewing court is unable to review the Commission's decision on appeal. In reviewing an adjudicatory administrative decision, a court must presume that the evidence presented is truthful. In other words, the determination of whether a witness is credible is a matter for the administrative agency and not for an appellate court. *Peterson v. Department of Labor & Indus.,* 22 Wn.2d 647, 157 P.2d 298 (1945); 4 K. Davis, *Administrative Law* § 29.06 (1958). *See State ex rel. Perry v. Seattle, supra.* In the case of unsworn testimony, how-

ever, the evidence cannot be given the traditional presumption of truthfulness and we are, therefore, unable to perform our appellate review function.

To summarize, we hold that when considering the importance of the oath, the significant interests at stake in a discharge hearing, the legislative provision authorizing the administration of oaths, and the minimal inconvenience that such a requirement would cause, due process requires that witnesses be sworn at a civil service discharge hearing.

The Commission argues that we should consider the error to be harmless. We disagree. Requiring witnesses to be sworn relates to the truth finding process and failure to do so taints the integrity of the entire proceeding. The error was not harmless.

Reversed and remanded.

RINGOLD, A.C.J., and WILLIAMS, J., concur.

Reconsideration denied October 12, 1981.

Review denied by Supreme Court December 18, 1981.