173 P.3d 259 (2007)
Paul Douglas INGRAM, Respondent,
v.
The DEPARTMENT OF LICENSING, Petitioner.
Bryan Lindley Delong, Respondent,
v.
The Department of Licensing, Petitioner.
No. 80149-5.
Supreme Court of Washington, En Banc.
Argued September 11, 2007.
Decided December 13, 2007.
*260 Charnelle Marie Bjelkengren, WA State Atty General's Office, Spokane, WA, Jay Douglas Geck, Office of the Attorney General, Olympia, WA, for Petitioner.
Kenneth Duncan Beckley, Attorney at Law, Ellensburg, WA, for Respondent.
CHAMBERS, J.
¶ 1 Two men challenge the 90-day suspensions of their driver's licenses under the State's implied consent law, RCW 46.20.308. They contend that their respective hearing officers should not have admitted a form declaration by the state toxicologist. We reject their arguments, reverse the trial court, and reinstate their 90-day suspensions.

BACKGROUND
¶ 2 For decades, the Washington State Legislature has engaged in an ever-expanding effort to eliminate or reduce the carnage intoxicated drivers wreak upon the people and highways of the State. This effort began in 1927, when Washington first prohibited driving on the State's roads while under the influence of alcohol or drugs. LAWS OF 1927, ch. 309, § 51. Alcohol testing was first introduced in 1949. LAWS OF 1949, ch. 196, § 119. In 1969, a popular initiative passed declaring that by driving on Washington roads, drivers gave implied consent to alcohol breath tests. LAWS OF 1969, ch. 1, § 1. Some years later, 1986 brought a per se intoxication standard based on breath instead of blood alcohol content. LAWS OF 1986, ch. 153, §§ 2-5. Recent times have seen amendments to drunk driving laws almost yearly. See, e.g., LAWS OF 1999, ch. 331, § 2; LAWS OF 1998, ch. 213, § 1; LAWS OF 1995, ch. 332, § 1; LAWS OF 1994, ch. 275, § 13; LAWS OF 1989, ch. 337, § 8. The 2004 legislature continued the tradition, stating:
The legislature finds that previous attempts to curtail the incidence of driving while intoxicated have been inadequate. The legislature further finds that property loss, injury, and death caused by drinking drivers continue at unacceptable levels. This act is intended to convey the seriousness with which the legislature views this problem. To that end the legislature seeks to ensure swift and certain consequences for those who drink and drive.
Laws of 2004, ch. 68, § 1.
¶ 3 For the sake of clarity, we first note that the implied consent proceedings before us are not criminal driving while under the influence proceedings. Rather, we are asked to review civil license suspension proceedings. These have a lower burden of proof and run on a parallel track to any criminal proceedings. See Thompson v. *261 Dep't of Licensing, 138 Wash.2d 783, 796-97, 982 P.2d 601 (1999). Under this civil statutory scheme, a person who operates a vehicle in Washington has by law given "implied consent" to a test of the person's breath or blood for alcohol upon a showing that the arresting officer has reasonable grounds to believe that the person was driving or in physical control of the vehicle while intoxicated.[1] RCW 46.20.308(1). If the person submits to a breath or blood test for alcohol and the test result is over the legal limit, the person's license to drive will be suspended for 90 days.[2] RCW 46.20.3101(2)(a).
¶ 4 A person who has failed a breath or blood test may challenge the suspension by requesting an administrative hearing. RCW 46.20.308(8). At the hearing, the sworn report of the arresting officer and anything that accompanies the report is deemed admissible without further evidentiary foundation, and the officer's sworn report is prima facie evidence that the officer had reasonable grounds to believe the person was operating or in physical control of the vehicle while intoxicated. Id.
¶ 5 With this background, we will examine the facts of the cases before us. At issue in these cases is the admissibility at implied consent hearings of declarations of the state toxicologist concerning thermometers of the breath testing machines.
¶ 6 In January 2005, an Ellensburg police officer saw Bryan Delong's car drifting from side to side within his lane and then crossing the center line. In May 2005, a Kittitas County sheriff's deputy followed Paul Ingram's car as it crossed over the center line and onto the shoulder at roughly 70 miles per hour, well over the posted speed limit. In each case, the driver was stopped and given a breath test. Delong and Ingram registered breath alcohol readings of .190 and .125 respectively, both well over the legal limit. Pursuant to the implied consent law, each man was sent a notice advising him that his license would be suspended for 90 days unless he requested a hearing. See RCW 46.20.308(8).
¶ 7 Both men retained the same lawyer, requested a hearing, and appeared at their hearings telephonically. At the hearings, the respective hearing officers considered the law enforcement officers' sworn reports as provided by RCW 46.20.308(8). In each case, the hearing officer considered a declaration submitted by the state toxicologist. The declaration appears to be a blanket declaration asserting that all thermometers in the breath testing machines used by the Washington State are "approved" thermometers.[3] The *262 state toxicologist's declaration is readily available on the Washington State Patrol web site. In each case, the declaration of the state toxicologist was provided to Delong and Ingram and placed into their hearing files before the hearing, but the declarations did not accompany the officers' sworn reports.
¶ 8 Delong and Ingram objected to the state toxicologist's declaration, arguing that it was not specifically admissible under any of the relevant statutes and regulations. Each hearing officer concluded the declaration was admissible because it was relevant, it was a department record, it was signed under penalty of perjury, and it was given to both Delong and Ingram before the hearing and generally available to the public on the Internet. As authority, the hearing officers cited RCW 46.20.332, dictating that the department "shall consider its records," and former WAC 308-103-100, -120, -150(9) (2002), authorizing the hearing officer to consider relevant evidence received before the end of the hearing.
¶ 9 Delong and Ingram were unsuccessful at their implied consent hearings and appealed to the superior court. The superior court suppressed both breath tests and reversed the license suspensions. The superior court also awarded Ingram $600 and Delong $350.[4] In Ingram's appeal, the superior court declared the matter had already been resolved in a recent similar case, Bell v. Dep't of Licensing, No. 05-2-00033-6 (Kittitas County Super. Ct. Sept. 29, 2005). In Bell, the same judge reversed a license suspension because the state toxicologist's declaration was not specifically admissible under the relevant statutes and regulations.[5] The Department of Licensing appealed the rulings of the Kittitas County Superior Court, and we accepted certification from the Court of Appeals and granted review.

STANDARD OF REVIEW
¶ 10 Our review of the meaning of statutes and regulations governing administrative proceedings is de novo, with appropriate deference to the department. City of *263 Seattle v. Clark-Munoz, 152 Wash.2d 39, 43, 93 P.3d 141 (2004); Federated Am. Ins. Co. v. Marquardt, 108 Wash.2d 651, 656, 741 P.2d 18 (1987); RCW 46.20.308(9). Whether the law was correctly applied to the facts is also a question of law we review de novo. See Silverstreak, Inc. v. Dep't of Labor & Indus., 159 Wash.2d 868, 880, 154 P.3d 891 (2007) (under Administrative Procedure Act, chapter 34.05 RCW, application of law to fact is a question of law). We uphold factual findings if supported by substantial evidence. See RCW 46.20.308(9); see also Alforde v. Dep't of Licensing, 115 Wash.App. 576, 579, 63 P.3d 170 (2003) (citing Dep't of Licensing v. Grewal, 108 Wash.App. 815, 819, 33 P.3d 94 (2001)).

ANALYSIS
¶ 11 Under the implied consent law, Washington drivers are deemed to have consented to a blood or breath test if arrested for suspicion of driving under the influence. RCW 46.20.308. If the test shows an alcohol concentration above the legal limit of .08 for an adult, the driver's license will be suspended for at least 90 days. RCW 46.20.3101(2)(a). The driver may request an administrative hearing to determine, among other things, whether the test was valid. RCW 46.20.308(8).
¶ 12 The department has rule-making authority for these proceedings and the legislature has largely exempted the department from the Administrative Procedure Act. RCW 46.01.110; RCW 34.05.030(2)(b). But certain evidentiary rules are prescribed by statute. For example, breath test results are admissible at the hearing only if, among other requirements, the department presents prima facie evidence that the simulator (a component of the breath test device) contained a thermometer approved by the state toxicologist. RCW 46.61.506(4)(a). The sworn report of the police officer, along with any accompanying evidence, is admissible without further evidentiary foundation. RCW 46.20.308(8). Certifications made under the criminal rules for courts of limited jurisdiction are also admissible without further evidentiary foundation. Id. Additionally, in a formal hearing, the department "shall consider its records." RCW 46.20.332.
¶ 13 Within these statutory constraints, the Department of Licensing has authority to promulgate rules for implied consent hearings. RCW 46.01.110. The hearing officer has the power to admit and weigh evidence under the department's rules. Former WAC 308-103-100, -120. The rules give the hearing officer the power to receive relevant evidence offered before the end of the hearing. Former WAC 308-103-120, -150(9). Hearing officers are directed to liberally construe admissibility to "`insure swift and certain punishment for those who drink and drive.'" State v. Vasquez, 148 Wash.2d 303, 315, 59 P.3d 648 (2002) (quoting RCWA 46.20.308). In a provision nearly parroting the formal hearing statute, the hearing officer has authority to examine the department's official records. Former WAC 308-103-150(9).
¶ 14 With these rules in mind, we turn to the parties' arguments. First, Ingram and Delong argue that the state toxicologist's declaration was not admissible under any of the relevant statutes or rules.[6] The trial court agreed, interpreting the word "admissible" in the applicable statutes and rules to mean "admitted" and concluding that any evidence received, "would be automatically admissible and therefore no ruling would be necessary." Bell, No. 05-2-00033-6, at 4. While we share some of the learned trial judge's concerns about a blanket declaration that declares that all thermometers in all state breath testing machines are "approved," we disagree with this reading of the relevant statutes.
¶ 15 Although former WAC 308-103-100(4) does state: "[e]vidence is admissible if received prior to, or during, the hearing," it does not establish that the evidence must be admitted or that no ruling is required. The statutes and regulations give the hearing officer authority to rule on the admissibility of evidence; they do not make evidence automatically *264 admissible. Former WAC 308-103-120(1). The hearing officer's authority to rule on admissibility is not entirely unlimited; at least, evidence must be relevant. Former WAC 308-103-150(5).
¶ 16 Administrative rules and regulations are interpreted as a whole, giving effect to all the language and harmonizing all provisions. Cannon v. Dep't of Licensing, 147 Wash.2d 41, 57, 50 P.3d 627 (2002). When considered as a whole, the department rules in place at the time gave the hearing officer authority to admit relevant evidence received before the end of the hearing. Former WAC 308-103-100, -120, -150(9). In this case, it was undisputed that the state toxicologist's declaration was received before the end of the hearing and that each of the hearing officers explicitly found it relevant. No further legal basis for admission was required.
¶ 17 Next, Delong and Ingram argue the legislature could not have intended documentary hearsay evidence such as the state toxicologist's declaration to be automatically admissible. They assert that court rules of evidence relating to hearsay prohibit admission of the state toxicologist's declaration. They argue that, unless a specific provision provides for admission, at least some authentication or foundation must be required. As logical and appealing as respondents' argument may be, it is not supported by the applicable statutes and rules.[7] The department argues that the rules of evidence excluding hearsay and requiring foundation do not apply.[8] We agree.
¶ 18 Generally speaking, administrative hearings proceed under significantly relaxed rules of evidence. See, e.g., RCW 34.05.452(2) (rules of evidence are "guidelines" under Administrative Procedure Act); Vasquez, 148 Wash.2d at 316, 59 P.3d 648 (evidentiary rules are relaxed at implied consent hearings). Informal administrative hearings often permit the admission of hearsay evidence. See, e.g., RCW 34.05.452(1). By their own provisions, the rules of evidence apply only to court proceedings. ER 101, 1101. This court, which promulgates the rules of evidence, has authority to prescribe rules for courts, but authority to prescribe rules for administrative proceedings has not been expressly delegated to the judicial branch. RCW 2.04.190.
¶ 19 The legislature intentionally established a relatively informal and certainly streamlined administrative process for implied consent hearings. One purpose of the implied consent law is to avoid lengthy litigation of license suspension and revocation proceedings. See Vasquez, 148 Wash.2d at 316-18, 59 P.3d 648. The hearings are limited in scope, may be held telephonically, and are held before an agency employee who is not required to have legal training. See Vasquez, 148 Wash.2d at 314-15, 59 P.3d 648 (citing former RCW 46.20.308(8), .329 (1999)). This streamlined procedure is consistent with allowing relevant evidence without regard to the highly technical rules governing hearsay and foundation.
¶ 20 Much of the evidence that the legislature has declared may be considered by the hearing officer during implied consent hearings is, by its nature, hearsay evidence. The officer's sworn report, the department's records, and other documentation that the hearing office may consider may be hearsay evidence. RCW 46.20.332. The hearing officer is permitted to issue subpoenas directing persons to produce designated books, documents, or things under the person's control. RCW 46.20.308(8); former WAC 308-103-150(3), (8). Such books or documents may be hearsay evidence. With this in mind, we find the trial court's conclusion that the officer is the only witness authorized to testify via sworn report or declaration is unsupported *265 by the statutes and regulations as a whole. Under the trial court's interpretation, the state toxicologist would have to testify in person. Such a conclusion is inconsistent with the streamlined and informal implied consent law. See Vasquez, 148 Wash.2d at 314-15, 59 P.3d 648.
¶ 21 In the past, this court has declined to add to or subtract from the clear language of rules and statutes. See Cannon, 147 Wash.2d at 56-57, 50 P.3d 627. In Cannon, the department argued that it need not comply with a then-existing rule requiring certification of thermometers in breath test devices. Id. This court held that the plain language of the statutes required certification. Id. at 59-60, 50 P.3d 627. We rejected the department's argument that the requirement was not substantive, saying,
This court will not add to or subtract from the clear language of a statute, rule, or regulation, even if it believes the Legislature, or in this case, the State Toxicologist, intended something else but did not adequately express it unless the addition or subtraction of language is imperatively required to make the statute rational.
Id. at 57, 50 P.3d 627 (footnote omitted). Under the clear language of the statutes and rules in Washington, relevant evidence received before the end of the hearing is admissible, with no further restrictions. See former WAC 308-103-100, -120, -150(9). As in Cannon, we are wary of reading into the rules restrictions that are not there or promulgating additional rules under the guise of interpreting them. Cannon, 147 Wash.2d at 57-58, 50 P.3d 627.
¶ 22 The parties' other arguments for and against admissibility of the state toxicologist's declaration rest on the assumption that a specific statutory or regulatory provision is needed to support admissibility. Because we conclude that the hearing officer had authority to admit relevant evidence received before the end of the hearing, we need not decide whether the declaration would be admissible under the other statutes and regulations raised by the parties.[9] Because we conclude that the rules of evidence prohibiting hearsay do not apply to implied consent hearings, we need not decide whether the declaration would fall under RCW 5.44.040, the public records exception to the hearsay prohibition.

CONCLUSION
¶ 23 We reverse the superior court and reinstate the 90-day suspension of Delong's and Ingram's driving privileges. The hearing officers committed no error of law in admitting and considering the state toxicologist's declaration. We also vacate the superior court's award of monetary judgment to Delong and Ingram.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice CHARLES W. JOHNSON, Justice SUSAN OWENS, Justice BARBARA A. MADSEN, Justice MARY E. FAIRHURST, Justice RICHARD B. SANDERS, Justice JAMES M. JOHNSON, Justice BOBBE J. BRIDGE.
NOTES
[1] There are some additional technical showings required of the State concerning the administration of the test itself. See RCW 46.61.506.
[2] Many other consequences flow from an alcohol related driving stop which could result in a much longer period of suspension and may result in a license revocation. RCW 46.20.3101.
[3] The October 27, 2004, declaration admitted at Delong's hearing certifies under penalty of perjury that the declarant, Dr. Barry K. Logan, is the state toxicologist authorized by law to approve breath test instruments. The relevant language concerning the thermometers reads:

The following instruments are approved for the quantitative measurement of alcohol in a person's breath:
a) The DataMaster,
b) The DataMaster CDM
These are the only two instruments utilized in the Washington State Patrol's breath-testing program.
A simulator device is attached to every DataMaster instrument. Each of these simulator devices employs a mercury-in-glass thermometer with a scale graduated in tenths of a degree measuring a range between 33.5 to 34.5 degrees centigrade, as approved in WAC 448-16-020.
A Guth 2100 wet bath simulator is a component in every DataMaster CDM. Every Guth 2100 wet bath simulator employs a digital thermometer system as approved in WAC 448-16-020.
Br. of Appellant, App. A. The March 25, 2005, declaration admitted at Ingram's hearing differs only in the last two paragraphs which read:
A Guth Model 34C or Guth 2100 wet bath simulator device is attached to every DataMaster and DataMaster CDM. Each Guth Model 34 C simulator employs a mercury in glass thermometer with a scale graduated in tenths of a degree measuring a range between 33.5 and 34.5 degrees centigrade. Each Guth 2100 wet bath simulator employs a digital thermometer. Persons who received their certification to conduct breath tests as described in WAC 448-16 have been trained and are certified to perform tests on the DataMaster, the DataMaster CDM, and portable breath test devices as described in WAC 448-15.
Br. of Appellant, App. B.
[4] Although the superior court decision does not so state, we presume the awards were authorized under RCW 4.84.350, allowing the prevailing party in judicial review of agency action to recover costs including reasonable attorney fees.
[5] The trial judge explained his ruling in Bell:

The Department provides three separate rationales for why Exhibit 2 [the state toxicologist's declaration] is admissible under the facts of this case. First, the Department argues. . . . since Exhibit 2 "accompanied" the officer's report when it was received by the hearings examiner, Exhibit 2 is admissible without further foundation. Under this reading, any item of mail delivered by the postman to the hearings examiner on the day the sworn report arrived in the mail would accompany the sworn report and thus be admissible at the DOL hearing. This cannot be what the legislature intended. A more reasonable interpretation of the statute is that the legislature intended that any evidence forwarded by the officer to the Department which accompanied the sworn report would be admissible: the officer's evidence which accompanied the sworn report would be treated in the same fashion as the sworn report.
The Department next argues that WAC 308-103-100 states that "evidence is admissible if received prior to, or during, the hearing." If that rule means what the Department asserts it means, Department of Licensing hearing examiners would never need to rule on questions of admissibility, because if the evidence was received before the hearing was over, it would be automatically admissible and therefore no ruling would be necessary. The court rejects this interpretation.
Finally, the Department argues that since WAC 308-103-150(9) allows hearing examiners to examine the `official records' of the department, and since Dr. Logan's declaration appeared in the specific file relating to Appellant, the hearings examiner was compelled to consider the document. This argument fails because the placement of the document into an `official record' does not convert that document into an official record. Even if it did, this rule simply allows the document to be examined, not admitted.
All three of these theories of admissibility revolve around one simple theme: that any and all information that is, in any fashion, brought before the hearings examiner is deemed evidence and worthy of consideration. If the legislature had desired this result, it could have said so. Instead, RCW 46.20.308(8) contemplates formal hearings which including [sic] witness testimony. Since the only witness authorized to testify via sworn report or declaration is the officer, the state toxicologist's declaration, after objection, was inadmissible.
Bell, No. 05-2-00033-6, at 4-5 (footnote omitted).
[6] The claims before us are based entirely on the relevant statutes and regulations. The appellants raise no challenges with respect to the sufficiency of the state toxicologist's declaration or to the constitutionality of the procedures followed.
[7] In Bell, the trial judge stated, "RCW 46.20.308(8) contemplates formal hearings which including [sic] witness testimony. Since the only witness authorized to testify via sworn report or declaration is the officer, the state toxicologist's declaration, after objection, was inadmissible." Bell, No. 05-2-00033-6, at 5.
[8] Recent amendments to the WAC specifically provide that "[e]vidence, including hearsay evidence, is admissible if in the judgment of the hearing officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely on in the conduct of their affairs." WAC 308-103-120(1). We suspect, but do not know, that the change was sparked by these cases.
[9] The department maintains (and Delong and Ingram dispute) that the state toxicologist's declaration is admissible under former RCW 46.20.308(8) (allowing certifications as in CrRLJ 6.13), under RCW 46.20.332 (allowing consideration of department records), under the public records exception to the hearsay rule, and by analogy to the hearing officer's power to subpoena documents and request exhibits under RCW 46.20.308(8) and former WAC 308-103-150(8).